IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| BRIAN MARTIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:13-cv-00775-HEH |
| | ) | |
| A.L., a minor; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Defendants A.L., a minor, and Abby Lovinger and Adam Lovinger, individually and as next best friends of A.L., their minor son (collectively the "Defendants"), by counsel, state the following as their Memorandum in Opposition to the Ex Parte Motion for a Temporary Restraining Order (the "Motion") of Plaintiffs Brian Martin and Marko Princip (collectively "Plaintiffs"):

**SUMMARY OF GROUNDS FOR OPPOSITION**

Nearly ten months after Plaintiffs' alleged claims arose, and almost a month after Defendants initiated a still-pending lawsuit in an appropriate venue to establish the parties' respective rights and interests, Plaintiffs filed a second lawsuit here in Virginia and filed, *ex parte*, a motion for a temporary restraining order ("TRO"). A TRO is an extraordinary remedy that is granted only in limited circumstances, and a plaintiff seeking a TRO must make a clear showing that plaintiff is likely to suffer irreparable harm in the absence of the TRO, that the balance of equities tips in plaintiff's favor, and that plaintiff is likely to succeed on the merits. Plaintiffs' Motion should be denied because they have not made any such clear showing.

Plaintiffs offer only unsupported, conclusory assertions that they will suffer irreparable harm absent a TRO. Not only is Plaintiffs' lack of evidence of actual, imminent harm fatal to their Motion, but Defendants' track record of growing the subscriber base for the YouTube Channel VideoGames (hereinafter "VideoGames") almost seven-fold during Plaintiffs' ten-month delay proves that Plaintiffs' irreparable harm claim is unsupported. Plaintiffs also have failed to make a clear showing that the balance of the equities warrants the issuance of a TRO. On one hand are Plaintiffs' ten-month delay and lack of evidence showing any actual, imminent harm; on the other hand is Defendants' proven successful management of VideoGames and the harm Defendants would suffer if they were now barred from the site they have grown during the last ten months.

Finally, Plaintiffs have failed to make a clear showing that they are likely to succeed on the merits. Plaintiffs have shown only that there is a dispute as to the validity of a settlement agreement resolving ownership of VideoGames--a dispute that is currently being litigated in a pending lawsuit--which is insufficient to make the clear showing of likelihood of success. Because the standard for the extraordinary relief Plaintiffs seek is high and because Plaintiffs cannot meet it, the Motion must be denied.

## STATEMENT OF FACTS

The parties in this case are currently involved in a pending lawsuit arising out of a disputed civil settlement agreement. Declaration of Paul J. Smoot in Support of Opposition to Temporary Restraining Order and/or Preliminary Injunction, submitted herewith as an exhibit ("Smoot Declaration" or "Smoot Decl."), ¶ 5. The settlement was reached to resolve a prior disagreement between A.L. and Princip over the ownership and control of VideoGames. *Lovinger et ux v. Princip et al.,* Superior Court of California, In and For the County of San

Mateo, Case No. 542942, filed October 25, 2013 (the "Pending California Action"), attached as Exhibit 6 to Plaintiffs' Ex Parte Application (describing roots of the dispute over the ownership of VideoGames website). According to Plaintiffs, Defendant A.L. "locked Plaintiffs out" of VideoGames on or about January 29, 2013, and Plaintiffs were unable to access the site since that time. Compl. ¶ 17.

In October 2013, Plaintiff Marko Princip and Defendant A.L. reached an agreement to resolve the dispute. Princip agreed to relinquish any claim of interest in VideoGames and grant a release of any and all claims related thereto in exchange for 20% of the net profits for three (3) years. Settlement Agreement, attached as <u>Exhibit 52</u> to Smoot Declaration, ¶ 2b. This agreement was memorialized in a written contract that bears Princip's signature and that Princip transmitted directly via email and via Federal Express to the Lovingers' attorney. Smoot Declaration ¶ 17. Plaintiffs have tendered a declaration in support of their Motion that purports to be from Princip, which asserts that he "never signed any such settlement and release" (Princip Declaration ¶ 8). However, the negotiation and validity of the settlement agreement are corroborated by extensive telephonic negotiations as well as email and text communications between Plaintiffs and the Lovingers before, contemporaneously, and even after Princip's transmittal of multiple execution copies of the settlement agreement. Smoot Declaration ¶¶ 6-24; Declaration of Abby Lovinger, attached hereto as an exhibit ("Lovinger Declaration" or "Lovinger Decl."), ¶ 4 (screen shots of Princip text messages).

Subsequently, the Lovingers' counsel was notified that Plaintiffs had retained their current counsel who disputes the validity and/or effect of the settlement agreement. On October 25, 2013, Defendants filed the Pending California Action in San Mateo County, which is the county for service of the registered agent of YouTube as well as the venue agreed upon by the

3

parties in the settlement agreement. Smoot Decl. ¶ 5. Plaintiffs subsequently filed suit in this Court on November 20, 2013. On November 26, 2013,[1] Plaintiffs sent the Lovingers' counsel a copy of the *ex parte* Motion.

During the period of time between January, 2013, and the filing of Plaintiffs' Motion, A.L. paid off VideoGames' debts and grew VideoGames from approximately 191,000 subscribers to 1.24 million subscribers today. Lovinger Decl. ¶ 5. In addition, the Lovingers have entered into a revenue-generating "Content Provider Agreement" with a third party for VideoGames. If A.L. were to be deprived of access or control of VideoGames, then the contract could be declared null and void and the third party would have the right to remove their web-based advertisements and stop calculating or generating revenue. *Id.* ¶ 6.

## STANDARD OF REVIEW

A plaintiff seeking the a temporary restraining order[2] "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *W. Indus.-N., LLP v. Lessard*, No. 1:12cv177, 2012 WL 859459, at *4 (E.D. Va. Mar. 13, 2012) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "All four of the factors set forth in *Winter* must be satisfied." *Versatile v. Johnson*, No. 3:09CV120, 2011 WL 5119259, at *45 (E.D. Va. Oct. 27, 2011) aff'd, 474 F. App'x 385 (4th Cir. 2012) cert. denied, 133 S. Ct. 1261 (2013) (Hudson, J.). A TRO is "'an extraordinary remedy that may only

---

[1] Although the date on Plaintiffs' declarations is November 21, Plaintiffs waited until November 26—immediately before the Thanksgiving holiday—to file and give notice of the *ex parte* Motion.

[2] Whether viewed as a motion for a TRO or, due to the Defendants' notice of the motion and the passage of time since Plaintiffs filed the Motion, a motion for a preliminary injunction, the standard is the same. *Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, No. 2:10CV616, 2011 WL 1119565, at *2 (E.D. Va. Mar. 1, 2011) ("[T]he legal standard for issuing a TRO is the same as that for a preliminary injunction.").

be awarded upon a *clear showing* that the plaintiff is entitled to such relief.'" *Diamonds Direct USA, Inc. v. BFJ Holdings, Inc.*, 895 F. Supp. 2d 752, 758 (E.D. Va. 2012) (quoting *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011)) (emphasis added) (Hudson, J.).[3]

## ARGUMENT

**I.    Plaintiffs Have Not Made a Clear Showing That They Will Suffer Irreparable Harm Absent a TRO.**

A TRO "may only be awarded upon a clear showing that the plaintiff . . . is likely to suffer irreparable harm in the absence of preliminary relief." *Dewhurst*, 649 F.3d at 290 (quotation marks and citation omitted). Irreparable harm occurs "when money damages are difficult to ascertain or are inadequate; if the projected loss can be readily calculated, the harm is not irreparable." *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, No. 1:08cv955, 2009 WL 111603, at *2 (E.D. Va. Jan. 14, 2009) (internal quotation and citations omitted). The "[i]rreparable harm must be 'neither remote nor speculative, but actual and imminent.'" *W. Indus.-N., LLP*, 2012 WL 859459, at *9 (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)). And failure to make this "clear

---

[3]    Plaintiffs rely on *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir. 1977), and its "balance-of-hardship test" (Pls.' Mem. at 6). That reliance is misplaced. Because of its differences with the *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), test, the *Blackwelder* balance-of-hardship test may no longer be applied in granting or denying preliminary injunctions in the Fourth Circuit. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), vacated on other grounds, 130 S.Ct. 2371 (2010), reinstated in relevant part, 607 F.3d 355 (4th Cir. 2010). Thus, Plaintiffs' argument that "[i]f the balance of the potential harms to the parties tips in favor of the plaintiff, as temporary restraining order should be granted if plaintiff raises questions so serious and substantial as to make them fair ground for litigation," (Pls.' Mem. at 6), is not an accurate statement of the TRO standard applied by this Court. The *Winter/Real Truth About Obama* standard is "a stricter standard that requires plaintiffs to make a clear showing of irreparable harm and that they will succeed on the merits." *Gen. Parts Distribution LLC v. Perry*, 907 F. Supp. 2d 690, 692 (E.D.N.C. 2012).

showing" of "likely" irreparable harm requires denial of the TRO. *Versatile*, 2011 WL 5119259, at *45 ("All four of the factors set forth in *Winter* must be satisfied.") (Hudson, J.).

Plaintiffs have failed to make a clear showing that they will suffer irreparable harm absent a TRO. Plaintiffs' claim that they will be irreparably harmed if they are "not granted access to VideoGames in order to ensure that asset is not forever wasted, converted, destroyed[,] or otherwise liquidated or assigned to a third-party." Pls' Mem. at 7. But Plaintiffs have offered no evidence that any waste, conversion, destruction, liquidation, or assignment, is actual and imminent. To the contrary, Defendants have grown VideoGames' subscriber base and have no intention of liquidating or assigning the site. Lovinger Decl. ¶ 7.

Plaintiffs' expert declaration fares no better. Plaintiffs' expert asserts that "[i]f the VideoGames channel is not continually maintained with skill and sophistication, it risks losing 100% of the brand equity," (Dkt. 3-6 (Decl. of D. Kramer) ¶ 2.b), that "[d]ue to the timing [of the XBOX 1 and PlayStation 4 releases], the Plaintiffs have already lost many growth, marketing, branding, and partnership opportunities that VideoGames could have executed," (*id*. ¶ 2.c), and that a TRO is necessary "[t]o prevent deeper losses," (*id*. ¶ 3). But, again, Plaintiffs offer no evidence to support any of these assertions; they offer no evidence that the "risk" of losing brand equity, the "lost" growth, marketing, branding, and partnership opportunities, or the "deeper losses" will actually and imminently occur. Without evidence to support them, these are merely conclusory assertions, which are insufficient to make a clear showing that Plaintiff will suffer irreparable harm absent a TRO. *TBB Global Logistics, Inc. v. ICAT Logistics, Inc.*, No. Civ. WDQ-13-1428, 2013 WL 2302677, at *6 n.10 (D. Md. May 23, 2013) ("[C]onclusionary assertions are insufficient to show its entitlement to injunctive relief.").

Plaintiffs' assertion that Defendants "are not maintaining VideoGames in an appropriate manner" and that "[a]s a result, VideoGames likely has and will continue to lose subscribers," Pls' Mem. at 7, simply carries no weight. This is because Plaintiffs fail to make a showing of actual or potential loss of customers. Although "[a] plaintiff can demonstrate irreparable injury by showing that it faces a 'permanent loss of customers to a competitor or the loss of goodwill,'" *Signature Flight Support Corp.*, 2009 WL 111603, at *3 (quoting *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994)), a plaintiff "must present sufficient evidence for the Court to find that it is likely that such losses have occurred or will occur absent preliminary injunctive relief." *Pro-Concepts, LLC v. Resh*, No. 2:12cv573, 2013 WL 5741542, at *21 (E.D. Va. Oct. 22, 2013). Thus, courts applying this "lost customer or goodwill" standard "require specific evidence concerning the actual or potential loss of customers or goodwill before finding irreparable injury." *Id*.

The "possible" loss of customers standard set forth in *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546 (4th Cir. 1994), does Plaintiffs no good. The court in *Multi–Channel* affirmed a trial court's entry of a preliminary injunction due to the "possibility" that the company would suffer a "permanent loss of customers to a competitor or the loss of goodwill." 22 F.3d at 552. This "possibility" standard is at odds with *Winter*, where "the Supreme Court found such a 'possibility' standard 'too lenient,' requiring instead that a plaintiff show 'likely' irreparable injury." *Signature Flight Support Cor. v. Landow Aviation Ltd. P'ship*, 442 F. App'x 776, 785 (4th Cir. 2011). The Fourth Circuit affirmed the trial court's grant of a preliminary injunction in *Signature Flight Support* because although the trial court relied on *Multi–Channel*, the trial court after "an eight-day bench trial" found that "[the plaintiff] demonstrated not only a possibility of harm, but harm in fact." *Id*.

7

Here, Plaintiffs make the conclusory assertion that "[w]ithout constant uploading of digital material . . . sufficient promotion . . . and coordination of the advertisements . . . the subscriber base will quickly diminish or at least stagnate." Dkt. 3-3 (Decl. of M. Princip) ¶ 5. Plaintiffs, however, put forth no specific evidence of actual and actual or potential loss of customers; nor could they, as the number of subscribers to VideoGames has increased nearly seven-fold since January 2013. Lovinger Decl. ¶ 5. In November 2013 alone, the number of subscribers has increased 10.9%. *Id.* Thus, Plaintiffs' unsupported assertions fail to make a clear showing of likely irreparable harm.

Moreover, Plaintiffs waited nearly ten months from the date of the alleged "lock out" from the VideoGames site to request a TRO. This delay "indicate[s] an absence of the kind of irreparable harm required to support a preliminary injunction." *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (finding that a nine-month delay in filing suit could show an absence of irreparable harm). Not only does this ten-month delay indicate an absence of irreparable harm, but VideoGames' subscriber growth in this ten-month period shows no harm in fact. Plaintiffs' Motion thus should be denied.

**II.    Plaintiffs Have Failed to Establish that the Balance of the Equities Requires a TRO.**

Plaintiffs also have failed to make a clear showing that the balance of equities tips in their favor. On one hand, Plaintiffs waited nearly ten months before seeking a TRO after they were allegedly "locked out" of VideoGames. "A plaintiff's delay in seeking injunctive relief weighs against it when a court balances the relative harms to the parties." *Signature Flight Support Corp.*, 2009 WL 111603, at *5. In Plaintiffs' ten-month delay Defendants have grown VideoGames' subscriber base, and as discussed above Plaintiffs have offered no evidence that VideoGames will lose subscribers or otherwise be harmed.

On the other hand, a TRO would harm Defendants. *Signature Flight Support Corp.*, 2009 WL 111603, at *7 (stating that where "the Court has yet to decide the merits of the case . . . it is appropriate to weigh the actual harm that a preliminary injunction would cause [the] Defendant"). Defendants would be prejudiced by having expended time and resources in building VideoGames were Plaintiffs to be permitted—before a court decides the merits of their case—to bar Defendants "from any and all attempts to control, modify, edit or otherwise log into VideoGames," (Dkt. 3-1, Proposed Order), particularly in light of Defendants' track record of success in growing VideoGames. More importantly, the revenue-generating Content Provider Agreement with a third party for VideoGames would be put at risk. Lovinger Decl. ¶ 6. Accordingly, Plaintiffs have failed to make a clear showing that the balance of equities tips in their favor, and their Motion should be denied.

### III. Plaintiffs Have Failed to Make a Clear Showing that they are Likely to Succeed on the Merits.

Plaintiffs also have failed to make a clear showing that they will likely succeed on the merits. Plaintiffs claim that they are likely to succeed on the merits "in light of the fact that Defendants' alleged ownership stems from forged documents and e-mails." (Pls.' Mem. at 8.) Defendants, however, contest that these documents and e-mails are forged. Indeed, the negotiation and validity of the settlement agreement are corroborated by extensive telephonic negotiations as well as email and text communications between Plaintiffs and the Lovingers before, contemporaneously, and even after Princip's transmittal of multiple execution copies of the settlement agreement.

More importantly, Defendants have already gone to court in order to prove that Princip agreed to transfer all rights, title, and interest in VideoGames to Defendants, and that Plaintiffs' efforts to intimidate the Lovingers should be rejected. Defendants filed that case in an

9

appropriate and convenient venue with jurisdiction over the parties and over YouTube (enabling speedy and effective execution of any judgment and/or order pertaining to VideoGames). That Plaintiffs' claim the California lawsuit is "frivolous" because, they claim, the written contract embodying this agreement was "forged"—both of which Defendants dispute—are factual disputes that should and will be resolved by the fact finder in the San Mateo court.[4]

Plaintiffs thus have shown only that there is a factual dispute as to whether Plaintiff Marko Princip transferred VideoGames to Defendants, which is not enough to make the clear showing required to establish likelihood of success on the merits. *Allegra Network LLC v. Reeder*, No. 1:09cv912, 2009 WL 3734288, at *3 (E.D. Va. Nov. 4, 2009) ("Because the Court cannot resolve these factual inconsistencies, the Court finds that Plaintiff has been unable to establish that Defendant did in fact breach the contract and therefore has not established a likelihood of success on the merits."). Accordingly, Plaintiffs have failed to make a clear showing that they are likely to succeed on the merits, and their Motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order should be denied.

Respectfully submitted,

/s/ Patrick R. Hanes
Patrick R. Hanes (VSB No. 38148 )

---

[4] Under the doctrine established by *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), a federal court may exercise its discretion to abstain from hearing a case "in favor of ongoing, parallel state proceedings in cases where 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favor abstention." *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 248 (4th Cir. 2013) (quoting *Colorado River Water Conservation Dist.*, 424 U.S. at 818). Defendants are timely filing a motion to dismiss or stay the complaint on this basis, as well as seeking a dismissal of all but one of the complaint's claims under Federal Rule of Civil Procedure 12(b)(6).

10

Jonathan T. Lucier (VSB No. 81303)
WILLIAMS MULLEN
200 South 10th Street. Suite 1600
Richmond, VA 23218-1320
Facsimile: 804.420.6507
Telephone: 804.420.6606
Email: phanes@williamsmullen.com
Email: jlucier@williamsmullen.com
*Counsel for A.L., a minor; and Abby Lovinger and Adam Lovinger, Individually and as next best friends of A.L. their minor son*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2013, a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Mark H. Allenbaugh, Esq.
> 30432 Euclid Ave., Suite 101
> Telephone: (800) 605-4993
> Facsimile: (714) 464-4463
> Email: mark@allenbaughlaw.com
> *Counsel for Brian Martin and Marko Princip*

> /s/ Patrick R. Hanes
> Patrick R. Hanes (VSB No. 38148)
> Jonathan T. Lucier (VSB No. 81303)
> WILLIAMS MULLEN
> 200 South 10th Street. Suite 1600
> Richmond, VA  23218-1320
> Facsimile:  804.420.6507
> Telephone: 804.420.6606
> Email: phanes@williamsmullen.com
> Email: jlucier@williamsmullen.com
> *Counsel for A.L., a minor; and Abby Lovinger and Adam Lovinger, Individually and as next best friends of A.L. their minor son*