IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| BRIAN MARTIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:13-cv-00775-HEH |
| | ) | |
| A.L., a minor; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR STAY**

Defendants A.L., a minor, and Abby Lovinger and Adam Lovinger, individually and as next best friends of A.L., their minor son (collectively the "Defendants"), by counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, state the following as their Memorandum of Law in Support of Motion to Dismiss or Stay the Complaint (the "Complaint") of Plaintiffs Brian Martin and Marko Princip (collectively "Plaintiffs"):

**SUMMARY OF GROUNDS FOR THE MOTION**

Nearly ten months after Plaintiffs' alleged claims arose, and almost a month after Defendants initiated a still-pending lawsuit in a California court to establish the parties' respective rights and interests, Plaintiffs filed a second lawsuit here in Virginia. This Court should exercise its discretion to abstain from hearing this case under *Colorado River* because the first-filed California Action and this case are parallel—because all of Plaintiffs' claims are compulsory counterclaims in the California Action—and the *Colorado River* balance weighs heavily in favor of abstention. The real dispute in this case is over a settlement agreement governed by California law, selecting venue in a California state court, negotiated in California

by a California attorney, concerning a website whose registered agent is in California, and the key non-party witness to which is located in California.

   In addition, each of Plaintiffs' Second through Ninth Claims fails to state a cognizable claim for relief.  Plaintiffs' claims fail because they: plead no agreement and, thus, no conspiracy (Second Claim); plead no reasonable reliance and, thus, no fraud (Third Claim); plead no property that can be converted under Virginia law (Fourth Claim); plead no breach induced or caused by defendants and thus, no tortious interference with business contract (Fifth Claim); plead no business expectancy and, thus, no tortious interference with future economic benefits (Sixth Claim); plead no trafficking or obtaining of information and, thus, no Computer Fraud and Abuse Act violation, 18 U.S.C. § 1030 (Seventh Claim); plead no access to communications and, thus, no Stored Communications Act violation, 18 U.S.C. § 2701 (Eighth Claim); plead no computer use and no underlying conversion and, thus, no Virginia Computer Crimes Act violation, Virginia Code § 18.2-152.3 (Ninth Claim).  Accordingly, and for the reasons explained below more fully, Defendants respectfully request that the Court grant their motion and dismiss the Complaint or stay this case pending resolution of the California Action or, in the alternative, dismiss the Second through Ninth Claims of the Complaint with prejudice.

## STATEMENT OF RELEVANT FACTS

   This case involves a dispute over the rights to control a channel on the YouTube website called "VideoGames."  (Compl. ¶ 8.)  YouTube users post digital video clips on VideoGames of the users playing video games.  *Id*. ¶ 9.  The users, by virtue of posting the digital clips on VideoGames, grant VideoGames' owners a license to use the clips for commercial purposes.  *Id*. VideoGames' owners generate revenues by selling advertising space; third-party advertisers pay to display their ads during the playing of the video clips on the channel.  *Id*. ¶¶ 10-11.  Plaintiffs

allege that they have always been and remain the sole and exclusive owners of all intellectual property in VideoGames and entitled to revenues generated by the channel.  *Id*. ¶ 11.

According to the Complaint, in June 2012 Plaintiffs "contracted with Defendant A.L. to assist in uploading" the digital clips to Videogames.  (Compl. ¶ 10.)[1]  Plaintiffs provided A.L. with the applicable user names and passwords to access Videogames so that he could perform these uploading services.  *Id*. ¶ 12.  Plaintiffs allege that A.L. remained a "third-party contractor" at all relevant times and that A.L. "was never an owner of any of the VideoGames intellectual property in whole or in part."  *Id*. ¶ 13.  On or about January 15, 2013, A.L. and Princip "had a disagreement" over A.L.'s fees for the uploading services.  *Id*. ¶ 14.

Plaintiffs allege that, after A.L. and Princip's disagreement in January 2013, four incidents took place.  (Compl. ¶¶ 15-18.)  The Complaint alleges that: (1) on or about January 27, 2013, A.L. impersonated Leah Cone, a manager for the Style Haul network, "in an effort to delay and prevent Plaintiffs from entering into an agreement with the Style Haul network to promote" VideoGames, *id*. ¶ 15; (2) on or about January 27, 2013, A.L. "demanded $10,000 from Plaintiffs under threat that" A.L. "would prevent Plaintiffs from having further access of control to VideoGames without receiving said payment," *id*. ¶ 16; (3) on or about January 29, 2013, A.L. "locked Plaintiffs out" of VideoGames "by changing the email addresses and passwords required to access and maintain VideoGames" and that Plaintiffs "have been unable to access or exert control over VideoGames" since then, *id*. ¶ 17; and (4) on or about January 29, 2013, A.L., "through his parents" defendants Abby and Adam Lovinger and without Plaintiffs' authorization, entered into a contract with the IGN YouTube network under which IGN would

---

[1]     This paragraph is numbered "10" but appears after the paragraph numbered "11" and before the paragraph numbered "12."

promote VideoGames through the IGN network and would pay to VideoGames a share of the advertising revenue IGN generated, no portion of which Plaintiffs have ever received, *id*. ¶ 18.

On or about October 12, 2013, A.L. and Princip entered into a settlement and release agreement (the "Settlement Agreement") that, according to the Complaint, "purported" to transfer Princip's interest in VideoGames to A.L.   (Compl. ¶ 19.)   This agreement was memorialized in a written contract that bears Princip's signature and that Princip transmitted directly via email and via Federal Express to the Defendants' California attorney.  Smoot Decl. (Dkt. 9-1) ¶ 17.[2]   Plaintiffs allege that A.L. forged Princip's signature on the Settlement Agreement and that A.L. sent the Settlement Agreement "via the wires" to Defendant A.L.'s California attorney.  (Compl. ¶ 19.)  The negotiation and validity of the settlement agreement, however, are corroborated by extensive telephonic negotiations as well as email and text communications between Plaintiffs and the Lovingers before, contemporaneously, and even after Princip's transmittal of multiple execution copies of the settlement agreement.   Smoot Decl. (Dkt. 9-1) ¶¶ 6-24; Lovinger Decl. (Dkt. 10) ¶ 4.  The Settlement Agreement was negotiated in California by Defendants' California-based counsel.  *See generally* Smoot Decl. (Dkt. 9-1).  The Settlement Agreement stated that the parties agreed that the settlement, and the events related to it, arose in San Mateo County, based on YouTube's domicile in that county.  *Id*. Ex. 52 (Dkt 9-3

---

[2]      For purposes of its abstention analysis, the Court may consider matters outside the pleadings. *Kingsway Fin. Servs., Inc. v. Pricewaterhousecoopers, LLP.*, 420 F. Supp. 2d 228, 233 (S.D.N.Y. 2005) (quotation marks and citation omitted) ("Consideration of a motion to dismiss on abstention grounds is akin to a motion to dismiss for lack of subject matter jurisdiction, in which a court is not restricted to the face of the pleadings, but may review affidavits and other evidence to resolve factual disputes concerning its jurisdiction to hear the action."); *Hazbun Escaf v. Rodriguez*, 191 F. Supp. 2d 685, 687 (E.D. Va. 2002) aff'd sub nom. *Escaf v. Rodriguez*, 52 F. App'x 207 (4th Cir. 2002) ("It is proper to consider matters outside the pleadings for purposes of a motion to dismiss that is based on (i) a challenge to the Court's subject matter jurisdiction; (ii) failure to join a necessary and indispensable party; or (iii) abstention.").

p. 35), at 3.  The Settlement Agreement was governed by California law.  *Id.* (Dkt. 9-3 p. 35) ¶ 12.

On October 25, 2013, Defendants filed suit in California state court.  (Ex. A.)[3]  That case, styled *Lovinger, et al. v. Princip, et al.,* Superior Court of California, in and for the County of San Mateo, Case No. 542942 (the "California Action"), states claims for breach of the Settlement Agreement and several related tort claims.  After attempts at resolving the California Action failed, Plaintiffs Princip and Martin were served within the time period provided by California Rule of Court 3.110(b) and San Mateo County Superior Court Local Rule 2.3(d)(1).  Smoot Decl. (Dkt 9-1) ¶ 5; Cal. R. Ct. 3.110(b) ("The complaint must be served on all named defendants and proofs of service on those defendants must be filed with the court within 60 days after the filing of the complaint."); San Mateo Cnty. Super. Ct. R. 2.3(d)(1) ("[P]laintiff shall within 60 days after filing of the complaint serve the complaint on each defendant.").

Plaintiffs filed this suit on November 20, 2013.  (Dkt. 1.)  On November 26, 2013, Plaintiffs filed a motion for a temporary restraining order/preliminary injunction, a hearing on which is set for December 18, 2013, at 10:00 a.m..  (Dkt.)  Defendants now move to dismiss the Complaint.

---

[3]      In ruling on a motion to dismiss, the Court may "consider . . . official public records pertinent to the plaintiff's claims."  *Velez v. Bank of N.Y. Mellon Trust Co. N.A.*, No. 1:12cv1008, 2012 WL 5305508, at *3 n.1 (E.D. Va. Oct. 23, 2012) (citing *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006)).  The California Complaint is an official public record pertinent to Plaintiffs' claims.  The California Complaint is attached here as Exhibit A and was attached to Plaintiffs' preliminary injunction papers as Document 3-7 in the Court's docket for this case.

## ARGUMENT

I.     **The Complaint Should be Dismissed or Stayed Under _Colorado River._**

Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 248 (4th Cir. 2013) (quotation marks and citation omitted). This general rule in favor of exercising jurisdiction, however, is subject to exceptions; "federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest." *Id*. (quotation marks and citation omitted). One instance where a federal court may abstain from hearing a case is "abstention in favor of ongoing, parallel state proceedings in cases where 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favor abstention." *Id*. (quoting *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 818 (1976)). Those considerations exist here, and accordingly this Court should exercise its discretion to dismiss or stay this case under *Colorado River.*

In determining whether *Colorado River* abstention is appropriate, this Court must first determine whether there are parallel federal and state lawsuits. *Alfa Laval, Inc. v. Travelers Cas. & Sur. Co.*, No. 3:09cv733, 2010 WL 431301, at *2 (E.D. Va. Feb. 5, 2010) (denying motion to dismiss based on abstention) (citing *Chase Brexton Health Servs., Inc. v. Md.*, 411 F.3d 457, 464 (4th Cir. 2005)). If this threshold requirement is met, the Court must then determine if exceptional circumstances exist to warrant abstention by "carefully balanc[ing] several factors, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id*. (quoting *Chase*

*Brexton Health Servs.*, 411 F.3d at 463).  The decision to abstain falls within a district court's

discretion.  *Chase Brexton Health Servs.*, 411 F.3d at 464.

Five factors[4] are relevant to the inquiry here:

(1) whether the federal forum is an inconvenient one; (2) the desirability of avoiding piecemeal litigation; (3) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (4) whether state law or federal law provides the rule of decision on the merits; and (5) the adequacy of the state proceeding to protect the parties' rights.

*Chase Brexton Health Servs.*, 411 F.3d at 463-64.  The analysis in balancing these factors "is not

a 'hard-and-fast' one in which application of a 'checklist' dictates the outcome." *Id*. at 463.

### A.    The California Action and This Suit are Parallel Actions.

The California Action and this suit are parallel cases, within the meaning of *Colorado

River*.   State and federal actions are parallel "if substantially the same parties litigate

substantially the same issues in different forums."  *Ackerman*, 734 F.3d at 249 (quoting *Chase

Brexton Health Servs.*, 411 F.3d at 464).   "The proceedings need not be identical, but rather

substantially similar."  *Holland v. Hay*, 840 F. Supp. 1091, 1099 (E.D. Va. 1994).   Here, the

parties in the California Action and this suit are nearly identical.  Plaintiffs here are defendants in

the California Action, and Defendants Abby and Adam Lovinger are plaintiffs there.[5]  (Ex. A.)

The issues raised in the California Action and this suit are also substantially the same.  Both the

California Action and this case concern the same subject matter: the parties' rights and interests

in VideoGames.

---

[4]       *Chase Brexton Health Services v. Maryland* identifies a sixth factor not relevant, and therefore not addressed, here: "whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others." 411 F.3d at 463.

[5]       Does 1-10 are also defendants in the California Action, and Defendant A.L., the Lovingers' minor son, is not party to that case.

Although Plaintiffs state claims here—including fraud, tortious interference, and computer fraud claims—that are not currently a part of the California Action, this does not render the two cases dissimilar or non-parallel. *See, e.g.*, *Jackson Hewitt, Inc. v. J2 Fin. Servs., Inc.*, 901 F. Supp. 1061, 1066 (E.D. Va. 1995), *and Holland*, 840 F. Supp. at 1099. Plaintiffs' claims here—all arising out of the same series of transactions or occurrences—would be considered compulsory cross-complaints under California Code of Civil Procedure § 426.30(a), [6] so Plaintiffs could (and should) bring their claims in the California Action were this Court to dismiss or stay this case. And when Plaintiffs counterclaimed in California, the California Action "would become nearly identical to this proceeding with substantially the same parties litigating substantially the same issues." *J2 Fin. Servs.*, 901 F. Supp. at 1066 (internal quotation marks and citation omitted) (alteration removed). Thus, the California action would almost certainly resolve all the disputes between these parties were this Court to dismiss. The California Action and this case should therefore be considered parallel for purposes of *Colorado River* abstention.

### B.     The *Colorado River* Balancing Warrants Abstention Because the Factors On Balance Weigh in Favor of Abstention.

Because the California Action and this case are parallel, the Court must then determine whether the "careful[] balanc[ing]" of the *Colorado River* factors weighs in favor of abstention.

---

[6]     California's compulsory counterclaim rule, at California Code of Civil Procedure Section 426.30(a), states that "if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." Cal. Civ. Proc. Code § 426.30(a); *Align Tech., Inc. v. Bao Tran*, 179 Cal. App. 4th 949, 959-960, 102 Cal. Rptr. 3d 343, 350-351 (2009) (describing § 426.30 as the "compulsory cross-complaint statute"). "[T]he phrase 'related cause of action' in section 426.30 is defined as a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." *Align Tech.*, 179 Cal. App. 4th at 960, 102 Cal. Rptr. 3d at 351.

*Chase Brexton Health Servs.*, 411 F.3d at 463. On balance, these factors show that exceptional circumstances exist to permit this Court to exercise its discretion to dismiss or stay this case. Each of the factors relevant here is addressed in turn.

### 1. This Forum is Inconvenient to the Key Witnesses.

The inconvenience of the federal forum weighs in favor of abstention. Convenience refers to the "relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses." *See Colorado River*, 424 U.S. at 818. Here, the validity of the Settlement Agreement and the parties' conduct relating thereto is in dispute in both the California Action and this case. Key witnesses about the Settlement Agreement and negotiations relating thereto, including Plaintiff Martin and Defendants' California counsel, reside in California, and YouTube is based in California.[7] *See generally*, Smoot Decl. (Dkt. 9-1). Because all parties would be litigating in two forums on opposite sides of the United States were this Court to hear this case, the parties and witnesses to this case would be inconvenienced. This factor weighs in favor of abstention. *Accord Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 466 (S.D.N.Y. 2001) (finding that the inconvenience of the federal forum factor weighed in favor of abstention when permitting a case to go forward would lead to litigation in both California and New York).

### 2. There Will be Piecemeal Litigation if Both the California Action and This Case Proceed Concurrently.

The desirability of avoiding piecemeal litigation also weighs in favor of abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett Co., Inc. v. Clark Const. Grp., Inc.,* 286 F.3d 737, 744 (4th Cir. 2002) (quotation marks and citation omitted). The

[7] *See* http://www.youtube.com/t/contact_us (last visited December 10, 2013).

concern for avoiding piecemeal litigation is grounded in the same justification for abstention based on duplicate proceedings generally, namely "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817. "The 'mere potential for conflict in the results of adjudications, does not, *without more*, warrant staying exercise of federal jurisdiction,'" *Chase Brexton Health Servs.*, 411 F.3d at 465 (quoting *Colorado River*, 424 U.S. at 816) (emphasis added). Abstention is appropriate, however, where "retention of jurisdiction . . . create[s] the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation" or where the parallel litigation "is particularly ill-suited for resolution in duplicate forums." *Gannett Co.,* 286 F.3d at 744.

This matter is particularly ill-suited for resolution in duplicate forums. The subject matter at issue in the California Action and this suit is the same, so the California court and this court are likely to duplicate efforts on overlapping issues. The threat of inefficiency (and waste of judicial resource) in having two courts oversee similar pre-trial motions and discovery matters and two different triers of fact considering the same issues, evidence, and witnesses—all while witnesses and parties shuttle from California to Virginia, unlike in *Gannet Company*, where the parallel litigation was in Alexandria and Fairfax—counsels for a stay or dismissal under *Colorado River*. Thus, although the potential for conflicting results is not enough, by itself, to warrant abstention, the parallel litigation here presents a threat of inefficiency above and beyond that inherent in the duplicative nature of the parallel cases in two local fora. *Chase Brexton Health Servs.*, 411 F.3d at 465 (quoting *Colorado River*, 424 U.S. at 816) ("The 'mere potential for conflict in the results of adjudications, does not, *without more*, warrant staying exercise of

federal jurisdiction.'") (addressing parallel cases both proceeding in Maryland) (emphasis added).  This factor weighs in favor of abstention.

### 3.      The California Action was the First-Filed Case.

The order in which the courts obtained jurisdiction and the progress achieved in each action also weigh in favor of abstention.  This factor "should be viewed pragmatically, meaning that priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  *Gannett Co.*, 286 F.3d at 747-48.  Here, the California Action was filed nearly one month before this case.  The cases are both at the responsive pleading stage, so the order of filing is the sole measure to be considered for this factor.  Moreover, Plaintiffs' counsel was aware of the California Action at least as of November 1, 2013.  (See Dkt. 3-8 at 2.)  Instead of filing a counterclaim, Plaintiffs filed this suit; this suggests forum shopping, and "[f]orum shopping is also relevant and may in some cases justify *Colorado River* abstention to state court proceedings."  *Pitt v. Cohn*, No. PJM 10-1781, 2011 WL 280986, at *2 (D. Md. Jan. 26, 2011).  This factor is, at least, neutral.

### 4.      State Law Governs the Actual Controversy at Issue.

That state law provides the rule of decision on the merits also weighs in favor of abstention.  The presence of state law, standing alone, "can be used only in rare circumstances to justify *Colorado River* abstention."  *Gannett Co.*, 286 F.3d at 746 (internal quotation marks and citation omitted).  This source of law factor, however, is "designed to justify retention of jurisdiction where an important federal right is implicated and state proceedings may be inadequate to protect the federal right."  *Gannett Co.*, 286 F.3d at 746.  Here, the root of the dispute between the parties is governed by state law.  Both the California Action and Plaintiffs' Complaint allege state law claims including breach of contract and fraud.  The Settlement

Agreement is governed by California law.  Smoot Decl. Ex. 52 (Dkt 9-3 p. 35) ¶ 12.  Although Plaintiff has attempted to state two federal claims, the circumstances indicate that the federal claims were asserted in response to a pending state-court action.  Further, as argued below, both federal claims should be dismissed for failure to state a cognizable claim for relief.  These two federal claims do not implicate important federal rights that are not otherwise protected by available state law claims.  Given the clear reactive nature of this case, this factor is neutral.

> **5.    The California Action is Adequate to Protect the Parties' Rights.**

The adequacy of the California Action also weighs in favor of abstention.  This factor supports retention of federal jurisdiction when "an important federal right is implicated and state proceedings may be inadequate to protect the federal right."  *Gannett Co.*, 286 F.3d at 746. Here, Plaintiffs' federal claims do not assert important federal rights that are not otherwise protected by available state law claims.  The California court is an adequate forum for Plaintiffs' two federal claims, as "state courts are fully competent to decide issues of federal law," *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 251 (4th Cir. 1993), and state courts have concurrent jurisdiction over federal claims.  *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 748 (2012) ("In cases arising under federal law . . . there is a deeply rooted presumption in favor of concurrent state court jurisdiction, rebuttable if Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim.") (internal quotation marks and citation omitted).[8]  This factor does not overcome the other considerations favoring abstention addressed above.

---

[8]    State courts have concurrent jurisdiction over Computer Fraud and Abuse Act ("CFAA") civil claims, *H & R Block Tax Servs., Inc. v. Rivera-Alicea*, 570 F. Supp. 2d 255, 269 n.5 (D.P.R. 2008) ("This Court does not have exclusive jurisdiction over [the plaintiff's] CFAA claim.  Therefore, the [Puerto Rico court] can entertain [the plaintiff's] CFAA claim since it has

\* \* \*

"Ultimately, the decision of whether to defer proceedings because of parallel state litigation is generally committed to the discretion of the district court." *Allstate Ins. Co. v. Hechinger Co.*, 982 F. Supp. 1169, 1175 (E.D. Va. 1997) (quotation marks and citation omitted an alteration removed). Here, for the reasons set forth above, the California Action and this case are parallel and the *Colorado River* factors, on balance, weigh in favor of abstention. The Court should exercise its discretion to stay or dismiss this case under the *Colorado River* abstention doctrine.[9]

## II.   Each of the Complaint's Second Through Ninth Claims Fails to State a Claim for Which Relief can be Granted.

Alternatively, each of Plaintiffs' Second through Ninth Claims fails to state a cause of action for which relief can be granted and thus should be dismissed under Rule 12(b)(6) if the Court declines to abstain under *Colorado River*.

### A.   Standard of Review

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). A complaint will survive a motion to dismiss under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

concurrent jurisdiction over it."), and under the Electronic Communications Privacy Act ("ECPA"), of which the Stored Communications Act is a part. *Doe 1 v. AOL LLC*, No. 06-5866, 2010 WL 431890, at \*3-4 (N.D. Cal. Feb. 2, 2010) (noting that the Stored Communication is Title II of the ECPA and finding that "state courts possess concurrent jurisdiction over and may thus consider claims brought under the ECPA.").

[9]    In the alternative, this Court should stay this case under its inherent power to control its docket. *Sevel v. AOL Time Warner, Inc.*, 232 F. Supp. 2d 615, 617 (E.D. Va. 2002) ("[T]he power to stay proceedings 'is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'") (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Thus, the complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Where plaintiffs' claims sound in fraud, plaintiffs must also meet the heightened pleading standards of Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).

### B.      Plaintiffs Have Not Stated a Claim for Conspiracy.

Plaintiffs' Second Claim alleges civil conspiracy against all Defendants.  (Compl. ¶¶ 22-27.)[10]   Plaintiffs allege that Defendants "did conspire to wrongly defraud Plaintiffs of their lawful ability to operate and exploit VideoGames economic gain" and that defendants "did conspire to contract with a third-party to exploit VideoGames for commercial gain and thereby deprive Plaintiffs of any and all economic benefit of Videogames."   (Compl. ¶¶ 23-24.) Plaintiffs allege that "[t]his conduct constitutes a civil conspiracy as defined in Virginia Code § 18.2-500."  (Compl. ¶ 25.)  Section 18.2-500 imposes civil liability for the conduct described in Virginia Code § 18.2-499.  *See* Va. Code § 18.2-500(A).

Section 18.2-499 imposes liability on "[a]ny two or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his . . . trade, business, or profession by any means whatsoever." Va. Code § § 18.2-499(A).  To state a Virginia statutory (or common law) civil conspiracy claim, a "plaintiff must first allege that the defendants combined together to effect a preconceived plan

---

[10]      The paragraphs under Plaintiffs' title for their Second Claim are numbered beginning with "22," despite the last paragraph under Plaintiffs' title for their First Claim being numbered "24."

and unity of design and purpose, for the common design is the essence of the conspiracy." *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (internal quotation marks and citation omitted). Claims under Sections 18.2-499 and -500 "enjoy a heightened pleading standard." *Wigand v. Costech Techs., Inc.*, No. 3:07cv440, 2008 WL 65517, at *9 (E.D. Va. Jan. 4, 2008). So "to survive a motion to dismiss, Plaintiff must at least plead the requisite concert of action and unity of purpose in more than mere conclusory language." *Bay Tobacco*, 261 F. Supp. 2d at 499 (internal quotation marks and citation omitted). "Simple conclusory statements contained in a complaint are not sufficient to sustain a cause of action no matter how vicious the alleged conspiracy." *Wigand*, 2008 WL 65517, at *9.

Plaintiffs have not met this heightened standard. This is because they have not pleaded anything more than conclusory allegations that Defendants combined together to effect a preconceived plan and unity of design and purpose. Plaintiffs have not, for example, pleaded facts articulating when or where Defendants reached an *agreement* to conspire to harm Plaintiffs, let alone an agreement as to the means of carrying out the objectives of the alleged conspiracy. *Wigand*, 2008 WL 65517, at *9. All Plaintiffs have said is that Defendants "jointly and in concert . . . did conspire." (Compl. ¶¶ 23-24.) But those allegations are mere conclusory allegations of the conspiracy elements, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "There can be no conspiracy without an agreement," *Wigand*, 2008 WL 65517, at *9 (quotation marks and citation omitted), and Plaintiffs do not plead facts supporting that essential element of the claim. Accordingly, Plaintiffs' conspiracy claim should be dismissed.

### C.      Plaintiffs Have Not Stated a Claim for Fraud.

Plaintiffs' Third Claim alleges fraud against all Defendants (Compl. ¶¶ 22-26.)[11] Plaintiffs allege that "Defendant A.L. wilfully and falsely held himself out to Plaintiffs to be Style Haul network manager Leah Cone in order to delay Plaintiffs from contracting with that network" and that "Defendants conspired together to willfully and falsely hold themselves out to be the owners of VideoGames when they negotiated and entered into a contract with IGN thereby preventing Plaintiffs from commercially exploiting VideoGames." (Compl. ¶¶ 23-24.)

Under Virginia law, to state a claim for fraud a plaintiff must allege (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, and (5) reliance by the party misled that (6) results in damage to that party. *Bennett v. Bank of Am., N.A.*, No. 3:12cv34, 2012 WL 1354546, at *6 (E.D. Va. Apr. 18, 2012) (citing *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 618 S.E.2d 316, 321 (2005)).  Moreover, in Virginia "[f]ailure to plead reasonable reliance is fatal to a common law fraud claim."  *Ostolaza-Diaz v. Countrywide Bank, N.A.*, 360 F. App'x 504, 506 (4th Cir. 2010) (citing *Metrocall of Del. v. Cont'l Cellular Corp.*, 246 Va. 365, 374, 437 S.E.2d 189, 194 (1993)).  And Plaintiffs' fraud claim is subject to Rule 9(b)'s heightened pleading standard, which requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  These "circumstances" include "'the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *Bennett*, 2012 WL 1354546, at *6 (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir.2008)).  "[L]ack of compliance with Rule 9(b)'s pleading requirements is

---

[11]     The paragraphs under Plaintiffs' title for their Third Claim are numbered beginning with "22," despite the last paragraph under Plaintiffs' title for their Second Claim being numbered "27."

treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir.1999).

Plaintiffs' fraud claim based on A.L.'s allegedly impersonation of a third party fails because the allegations do not meet Rule 9(b)'s heightened pleading standard. Plaintiffs do not plead the contents of the alleged false representation on which they relied. This is not a mere flyspeck Rule 9(b) problem (although Plaintiffs also do not plead the time and place of the misrepresentation); Plaintiffs' fraud allegation is that A.L.'s alleged impersonation delayed Plaintiffs from contracting with a third party. What A.L. allegedly said is the essence of the fraud claim. And Plaintiffs do not plead facts supporting their reasonable reliance on A.L.'s impersonating another person. Indeed, Plaintiffs' do not even make the conclusory allegation that they "reasonably relied" or even "relied." (Compl. ¶¶ 22-26.)

As to Plaintiffs' allegations regarding Defendants' alleged conspiracy to falsely hold themselves out to be the owners of VideoGames when they negotiated and entered into a contract with IGN, that allegation fails to state a fraud claim for two reasons. First, Plaintiffs do not sufficiently allege a conspiracy, as set forth above. Second, the alleged fraud (if any) would be fraud on *IGN* and *not* Plaintiffs. According to Plaintiffs, Defendants held themselves out to be VideoGames' owners to *IGN*, (Compl. ¶ 24), so any reliance would be on the part of IGN. And Plaintiffs allege that this fraud prevented *Plaintiffs* from commercially exploiting Videogames, *id.*, so any damage would fall on Plaintiffs and *not* IGN. A fraud claim, however, requires "reliance by the party misled" and "damage to [that] party." *Bennett*, 2012 WL 1354546, at *6. Accordingly, Plaintiffs fraud claim should be dismissed.

### D.     Intangible Property Rights Cannot be the Subject of a Conversion Claim Under Virginia Law.

Plaintiffs' Fourth Claim alleges conversion against all Defendants.  (Compl. ¶¶ 24-29.)[12] Under Virginia law, "'[a] person is liable for conversion for the wrongful exercise or assumption of authority over another's goods, depriving the owner of possession, or any act of dominion wrongfully exerted over the property in denial of, or inconsistent with, the owner's rights.'" *Alliance Tech. Grp., LLC v. Achieve 1, LLC*, No. 3:12cv701, 2013 WL 143500, at *6 (E.D. Va. Jan. 11, 2013) (quoting *Simmons v. Miller*, 261 Va. 561, 582, 544 S.E.2d 666, 679 (2001)). Under Virginia law "[g]enerally, conversion applies only to tangible property, though many courts have recognized conversion claims where intangible property rights are merged with a document, such as a stock certificate, promissory note, or bond."  *Id*. at *6 n.6 (citing *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 306, 440 S.E.2d 902, 906 (1994)).  And under Virginia law "money cannot be the subject of conversion, only tangible personal property may be converted."  *Jones v. Bank of Am. Corp.*, No. 4:09cv162, 2010 WL 6605789, at *5 (E.D. Va. Aug. 24, 2010).

Plaintiffs allege that the Defendants have "deprived Plaintiffs of the monies generated by" VideoGames, that Plaintiffs "at no time consented to Defendants claiming any ownership in" or "consented to Defendants locking them out of" VideoGames.  (Compl. ¶¶ 25-27.).  Neither of these intangible property rights can be the subject of a conversion claim in Virginia, and Plaintiffs do not allege that those intangible property rights are merged with a document. Accordingly, Plaintiffs' conversion claim should be dismissed.

---

[12]     The paragraphs under Plaintiffs' title for their Fourth Claim are numbered beginning with "24," despite the last paragraph under Plaintiffs' title for their Third Claim being numbered "26."

### E.     Plaintiffs Have Not Alleged that Defendants Induced or Caused any Breach of Contract.

Plaintiffs' Fifth Claim alleges tortious interference with business contract against all Defendants.  (Compl. ¶¶ 30-34.)[13]  Plaintiffs allege that they "jointly created VideoGames and formed a partnership contract," that A.L. "had knowledge of Plaintiffs' co-ownership of" VideoGames and "knew or should have known he was not entitled to ownership," that A.L. "intentionally interfered in Plaintiffs' ability to commercially exploit VideoGames by, *inter alia*, wrongfully interfering with Plaintiffs' negotiations with the Style Haul network," and that Defendants "intentionally interfered with Plaintiffs' business contracts by contracting with IGN." (Compl. ¶¶ 31-34.)[14]  Under Virginia law, to state a claim for tortious interference with contract a plaintiff must allege "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the alleged tortfeasor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damages."  *Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 822 (E.D. Va. 2013) (citation omitted).

Here, Plaintiffs' tortious interference with contract claim fails because Plaintiffs do not allege that the Defendants' alleged interference induced or caused a breach or termination of any contract.   Plaintiffs allege two contracts: the "partnership contract" for ownership of Videogames, (Compl. ¶ 31), and the "business contracts" Defendants interfered with by contracting with IGN, *id.* ¶ 34.  Plaintiffs do not allege that Defendants' alleged interference

---

[13]     There are two paragraphs numbered "34" in the Fifth Claim.

[14]     Plaintiffs' tortious interference counts, the Fifth and Sixth Claims, contain identical allegations.  (Compl. ¶¶ 30-40.)  The allegation that that A.L. "intentionally interfered in Plaintiffs' ability to commercially exploit VideoGames by, *inter alia*, wrongfully interfering with Plaintiffs' negotiations with the Style Haul network," *id.* ¶¶ 33, 38, is addressed under Section II.F, addressing the Sixth Claim titled "Tortious Interference with Future Economic Benefits."

induced or caused a breach in either the partnership contract or any of the unspecified "business contracts."  Accordingly, Plaintiffs' claim for tortious interference with a contract fails to state a claim for which relief can be granted.

### F.    Plaintiffs Do Not Plead Facts Showing They Would Have Realized Any Business Expectancy.

Plaintiffs' Sixth Claim alleges tortious interference "with future economic benefits" against all Defendants.  (Compl. ¶¶ 35-40.)  Plaintiffs allege that A.L. "intentionally interfered in Plaintiffs' ability to commercially exploit VideoGames by, *inter alia*, wrongfully interfering with Plaintiffs' negotiations with the Style Haul network."  (Compl. ¶ 33, 38.)    Under Virginia law, "[t]o successfully claim tortious interference with prospective economic advantage, a party must (1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference."  *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003) (applying Virginia law).   To successfully plead the required business expectancy, "[i]t must be reasonably certain that absent the defendant's misconduct, the plaintiff would have realized the expectancy." *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 830 (E.D. Va. 2011). And "[f]ailure to allege any specific, existing economic interest is fatal to the claim." *Beals*, 279 F. Supp. 2d at 709.

Here, Plaintiffs have failed to plead facts showing that they would have realized the expectancy of any future economic benefit from the Style Haul network.  They allege only that A.L. "wrongfully interfere[d] with Plaintiffs' negotiations with the Style Haul network," (Compl. ¶ 33, 38), and that when A.L. "held himself out to Plaintiffs to be Style Haul network manager

Leah Cone" that "delay[ed] Plaintiffs from contracting with the network, *id.* ¶ 23. Neither of these allegations suffices "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, as to whether Plaintiffs would have realized any expectancy from Style Haul. Moreover, Plaintiffs do not allege any specific, existing economic interest with respect to any Style Haul contract. Thus, Plaintiffs' claim for tortious interference "with future economic benefits" should be dismissed.

### G. Plaintiffs Do Not Allege that Defendant A.L. Trafficked in Computer Passwords or Threatened to Obtain Information.

Plaintiffs' Seventh Claim asserts violations of two sections of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). 18 U.S.C. § 1030(g), the statute Plaintiffs' cite, is the CFAA section that creates a civil cause of action for violations of the CFAA. The Complaint's paragraph 36 contains two allegations that correspond to other sections of the CFAA. First, 18 U.S.C. § 1030(a)(6), makes it a CFAA violation to "knowingly and with intent to defraud traffic[] (as defined in section 1029) in any password or similar information through which a computer may be accessed without authorization." Second, 18 U.S.C.A. § 1030(a)(7)(B) makes it a CFAA violation to "with intent to extort from any person any money or other thing of value, transmit[] in interstate or foreign commerce any communication containing any . . . threat to obtain information from a protected computer without authorization or in excess of authorization."

However, the Complaint fails to allege that A.L. "trafficked" in passwords. For purposes of § 1030(a)(7)(B), "traffic" is defined in 18 U.S.C. § 1029. There, "traffic" is defined as to "transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of." 18 U.S.C. § 1029(e)(5). The Complaint alleges only that Plaintiffs "allow[ed] [A.L.] to use the appropriate . . . passwords," which he then used to "lock[] Plaintiffs out of the

VideoGames channel by changing the email addresses and passwords required to access" VideoGames.   (Compl. ¶¶ 12, 17.)   Nowhere do Plaintiffs allege that A.L. transferred or otherwise disposed of the password to another, nor do they allege that A.L. intended to do so.   18 U.S.C. § 1029(e)(5).  Plaintiffs' Complaint, at best, alleges that A.L. received the passwords and then used them without authorization.   This insufficient to state a § 1030(a)(7)(B) trafficking claim.  *State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, 621 F. Supp. 2d 309, 317 (E.D. Va. 2009) ("The Complaint does not allege that [defendant] transferred, or otherwise disposed of, [the at-issue] passwords; rather, it alleges that [defendant] received them . . . and used them without authorization.  Such conduct does not constitute 'trafficking' under § 1029.   Therefore, [defendant's] motion to dismiss the § 1030(a)(6) trafficking claim will be granted.").

As to § 1030(a)(7)(B), Plaintiffs fail to allege that A.L. threatened to obtain information from a protected computer.   The only allegation as to A.L.'s alleged threat is that A.L. "demanded $10,000 from Plaintiffs under threat that he . . . would prevent Plaintiffs from having any further access or control to VideoGames."   (Compl. ¶ 16.)   The alleged threat is to bar Plaintiffs from VideoGames, not to obtain information.  According, Plaintiffs' CFAA claims fail.

### H.   Plaintiffs Do Not Allege that Defendant A.L. Obtained Access to Any Electronic Communication.

Plaintiffs' Eighth Claim alleges violations of "18 U.S.C. §§ 2701, 2707 (Unlawful access to stored communications)" against Defendant A.L.   (Compl. ¶¶ 39-41.)  Plaintiffs allege that A.L. "intentionally accessed without authorization a facilit[y] through which an electronic communication service is provided in furtherance of the conspiracy to defraud Plaintiffs." (Compl. ¶ 40.)   This is a claim under 18 U.S.C. § 2701, the Stored Communications Act ("SCA"), which is part of the Electronic Commutations Protection Act ("ECPA").   Section 2702 provides a civil cause of action for violations of the SCA.   Section 2701 makes it an SCA

violation to "intentionally access[] without authorization a facility through which an electronic communication service is provided, or intentionally exceed[] an authorization to access that facility; and *thereby obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage*." 18 U.S.C. § 2701 (emphasis added). "The SCA prohibits intentionally accessing without authorization a facility through which electronic communications are provided or doing so in excess of authorization, and, in so doing, obtaining access to an electronic communication while it is in electronic storage." *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 636 (E.D. Va. 2009) (internal quotation marks, citation, and alteration omitted).

Plaintiffs' SCA claim fails because they have not alleged that A.L. accessed a facility through which an electronic communication service is provided and then obtained, altered, or prevented authorized access to a wire or electronic communication while it is in electronic storage. The Complaint's only allegations related to the SCA claim are that A.L. "caused an electronic communication to be transmitted via the wires to [Defendants' California counsel], which [A.L.] caused to wrongfully appear to emanate from" Princip's e-mail address. (Compl. ¶¶ 20-21.) These allegations do not allege that A.L. obtained access to any electronic communication; they allege only that A.L. caused an e-mail to appear to "emanate from" Princip's e-mail address, not that A.L. accessed Princip's e-mail account. Thus, Plaintiffs' SCA claim must fail.

## I.     Plaintiffs Have Not Pleaded That A.L. "Used" a Computer Under the VCCA Nor that A.L. Engaged in the Required Underlying Conduct.

Plaintiffs' Ninth Claim alleges violations of the Virginia Computer Crimes Act, Virginia Code § 18.2-152.3, against Defendant A.L. (Compl. ¶¶ 42-44.) Plaintiffs allege that A.L. "knowingly and with intent to defraud trafficked in passwords and similar information through

which a computer was accessed without authorization . . . and which he intended to extort monies and convert the property of Plaintiffs." (Compl. ¶ 43.) Plaintiffs' Ninth Count alleges a violation of the Virginia Computer Crime Act ("VCCA"), Virginia Code § 18.2-152.3.

Virginia Code § 18.2-152.3 prohibits using a computer network "without authority" and thereby obtaining, embezzling, or converting property. *Yessin*, 686 F. Supp. 2d at 636. Section 18.2-152.3 applies only to a "person who uses a computer or computer network, without authority." Va. Code § 18.2-152.3. "For purposes of the VCCA, an individual 'uses' a computer or a computer network 'when he attempts to cause or causes a computer or computer network to perform or to stop performing computer operations.'" *Se. Wholesale Corp. v. Cox Commc'ns Hampton Roads, LLC*, No. 2:12CV701, 2013 WL 2147478 (E.D. Va. May 14, 2013) (quoting Va. Code § 18.2–152.2).

Here, Plaintiffs have not alleged that A.L. attempted to cause or caused a computer or computer network to perform or to stop performing computer operations. Plaintiffs instead allege that A.L. "trafficked in passwords and similar information." (Compl. ¶ 43.) This does not allege the conduct required to state a VCCA claim. Moreover, Plaintiffs' claimed VCCA violations are premised on A.L.'s "intent" to "extort monies" and "convert the property" of Plaintiffs. *Id.* The underlying conduct sufficient to state a VCCA claim, however, does *not* include extortion. Va. Code §18.2-152.3 ("Any person who uses a computer or computer network, without authority and: [o]btains property or services by false pretenses; [e]mbezzles or commits larceny; or [c]onverts the property of another. . . ."). Plaintiff has not stated a claim for conversion, as discussed above. And the VCCA "requires that the defendant must *actually commit* larceny, false pretenses, embezzlement, or conversion to be liable." *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 934 (E.D. Va. 2010) (emphasis in original). Plaintiffs

allege only that A.L. "inten[ded] to extort monies and convert the property of Plaintiffs." (Compl. ¶ 43.) Thus, Plaintiffs' VCCA claim must fail.

## CONCLUSION

For the foregoing reasons, Defendants, by counsel, respectfully request that this Court grant their motion and dismiss the Complaint or stay this case pending resolution of the California Action or, in the alternative, dismiss the Second through Ninth Claims of the Complaint with prejudice.

Respectfully submitted,

/s/ Patrick R. Hanes
Patrick R. Hanes (VSB No. 38148 )
Jonathan T. Lucier (VSB No. 81303)
WILLIAMS MULLEN
200 South 10th Street. Suite 1600
Richmond, VA  23218-1320
Facsimile:  804.420.6507
Telephone: 804.420.6606
Email: phanes@williamsmullen.com
Email: jlucier@williamsmullen.com
*Counsel for A.L., a minor; and Abby Lovinger and Adam Lovinger, Individually and as next best friends of A.L. their minor son*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2013, a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Mark H. Allenbaugh, Esq.
> 30432 Euclid Ave., Suite 101
> Telephone: (800) 605-4993
> Facsimile: (714) 464-4463
> Email: mark@allenbaughlaw.com
> *Counsel for Brian Martin and Marko Princip*

/s/ Patrick R. Hanes
_____
Patrick R. Hanes (VSB No. 38148)
Jonathan T. Lucier (VSB No. 81303)
WILLIAMS MULLEN
200 South 10th Street. Suite 1600
Richmond, VA  23218-1320
Facsimile:  804.420.6507
Telephone: 804.420.6606
Email: phanes@williamsmullen.com
Email: jlucier@williamsmullen.com
*Counsel for A.L., a minor; and Abby
Lovinger and Adam Lovinger, Individually
and as next best friends of A.L. their minor
son*
